UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAJMAN MOHAJER,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>LOGAN WOLF, Assistant Director of the Otay Mesa Field Office, U.S Immigration Customs Enforcement; TODD M. LYONS, Acting Director U.S Immigration Customs Enforcement; KRISTI NOEM, Secretary of the U.S Department of Homeland Security; and PAMELA BONDI, Attorney General of the United States.<br><br>　　　　　　　　　Respondents. | Case No.: 3:25-cv-02409-CAB-AHG<br><br>**ORDER:**<br>**1) PARTIALLY GRANTING PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER [Doc. No. 10];**<br><br>**2) TO SHOW CAUSE RE: INJUNCTION; AND**<br><br>**3) SETTING HEARING ON PETITION AND INJUNCTION** |

　　　Before the Court is Pajman Mohajer's ("Petitioner") petition for a temporary restraining order ("TRO"), [Doc. No. 10], pending a decision on his petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition"), [Doc. No. 9.]  For the following reasons, the Court **PARTIALLY GRANTS** the temporary restraining order and **ORDERS** Petitioner immediately released from U.S. Immigration and Customs Enforcement ("ICE") detention.

## I. BACKGROUND

Petitioner is an Iranian national who has been detained at the Otay Mesa Regional Detention Center since November 4, 2024. [Doc. No. 10 at 3; Doc. No. 15 at 2.] He was first admitted into the United States in 1990 as a lawful permanent resident but then, following a state criminal conviction, was ordered removed on July 18, 2007. [*Id.*] Petitioner was subsequently granted withholding of removal to Iran pursuant to 8 U.S.C. § 1231(b) and released from immigration custody. [*Id.*] After serving multiple sentences for state and federal convictions, Petitioner was transferred to ICE custody on November 1, 2024 for proceedings on the motion to reopen his withholding of removal to Iran. [Doc. No. 10 at 4; Doc. No. 15 at 2.] Petitioner's withholding of removal to Iran was terminated on May 21, 2025, but he was granted deferral of removal to Iran instead. [Doc. No. 10 at 4.] Despite detaining Petitioner for nearly a year, Respondent has not identified another country ("third country") for resettlement. [Doc. No. 15 at 3.]

## II. LEGAL STANDARD

The legal standard for issuing a TRO is essentially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In the Ninth Circuit, "[a] party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party is entitled to a preliminary injunction if he demonstrates (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A party must make a showing on all four prongs. *See A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018).

Under the Ninth Circuit's "serious questions" test, "a sliding scale variant of the *Winter* test," a party is "entitled to a preliminary injunction if it demonstrates (1) serious questions going to the merits, (2) a likelihood of irreparable injury, (3) a balance of

hardships that tips sharply towards the [petitioner], and (4) the injunction is in the public interest." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (internal quotation marks omitted). "[I]f a [petitioner] can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the [petitioner's] favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (internal quotation marks omitted).

### III.   DISCUSSION

#### A.   Jurisdiction

Respondents argue that "[t]o the extent Petitioner challenges the execution of his removal order, such challenges are barred by 8 U.S.C. § 1252(g)." [Doc. No. 15 at 7.] While Petitioner challenges the lawfulness of his continued detention and the due process he is owed before he is removed to a third country, he does not challenge ICE's decision to remove him to an appropriate country. [*See generally* Doc. No. 16 at 4–5.]

Moreover, holdings from the Supreme Court and the Ninth Circuit squarely contradict Respondents' attempt to limit this Court's jurisdiction. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court rejected the application of § 1252 to limit judicial review of indefinite post-removal-period detentions under § 1231(a)(6) and held "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Id.* at 687–88. And in *Ibarra-Perez v. United States*, 154 F.4th 989 (9th Cir. 2025), the Ninth Circuit held that it had "jurisdiction to review [a petitioner's] purely legal arguments challenging ICE's removal to [a country not named in the removal order] without providing any process that would have allowed him to present evidence supporting his fear of removal to that country." *Id.* at 999.

The Court is thus satisfied of its jurisdiction and proceeds to the merits.

///

///

B.  **Detention**

Petitioner asserts that he is likely to succeed on his claims that his detention by ICE for over a year is unlawful under 8 U.S.C. § 1231(a)(1)(A) and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). [Doc. No. 9 at 3; Doc. No. 10 at 2, 5.] Respondents admit that Petitioner has been in ICE custody since November 1, 2024, but argues that the period for the government to remove Petitioner under 8 U.S.C. § 1231(a)(1)(A) and *Zadvydas* did not start until his removal order became administratively final on June 21, 2025. [Doc. No. 15 at 2–3.] The Court agrees with Petitioner and **ORDERS** his immediate release.

1.  **Likelihood of Success**

As relevant here, 8 U.S.C. § 1231(a)(1)(A) provides a 90-day removal period that begins when the order of removal becomes administratively final. Petitioner was first ordered removed on July 18, 2007, and because he waived his right to appeal, [Doc. No. 9-4 at 2–3], that order of removal became administratively final the same day. *See* 8 C.F.R. § 1003.39; 8 C.F.R. § 1241.1. The 90-day removal period has long passed. That the government later revisited Petitioner's eligibility for withholding of removal to Iran does not upset the finality of his 2007 order of removal. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 539 (2021) ("[R]emoval orders and withholding-only proceedings address two distinct questions. As a result, they end in two separate orders, and the finality of the order of removal does not depend in any way on the outcome of the withholding-only proceedings."); *Riley v. Bondi*, 606 US. 259, 269 (2025) ("An order denying relief under the [Convention Against Torture] is not a final order of removal and does not affect the validity of a previously issued order of removal or render that order non-final.")

Under *Zadvydas*, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute [8 U.S.C. § 1231(a)(6)]." 533 U.S. at 699. The Petitioner has the initial burden to show that (1) he has experienced post-removal order detention for more than *Zadvydas'* six-month presumptively reasonable period of detention and (2) there is good reason to believe that there is no significant likelihood of removal in

the reasonably foreseeable future. *Id.* at 701. Given Petitioner's detention since November 1, 2024, Petitioner more than meets the first prong. The Court also finds that Petitioner has met the second prong.

All ICE can offer as evidence to rebut Petitioner's showing is a vague assertion that since June 21, 2024:

> ERO has been actively working as expeditiously as possible to locate a third country for resettlement and to effect Petitioner's removal to a third country, . . . including four requests to ERO's Removal Management Division for a third country resettlement with the last request sent on October 28, 2025. The requests remain pending.

[Doc. No. 15-1 at 3.]

The time to keep Petitioner in detention for purposes of removal, either under the statutory 90-day removal period or the 6-month *Zadvydas* period, has long passed. This factor strongly favors Petitioner.

### 2. Irreparable Harm

Under the second *Winter* factor, the Court considers whether Petitioner is "likely to suffer irreparable harm in the absence of [injunctive] relief." *Winter*, 555 U.S. at 20. Petitioner argues that he is experiencing unlawful detention, which is a clear irreparable harm. [Doc. No. 10 at 7.] Respondents do not contest this argument; instead, Respondents argue that Petitioner's alleged irreparable harm is a mere "possibility" and not an "immediate threatened injury," as required. [Doc. No. 15 at 8.]

There is no dispute that Respondents can promise nothing more than continued requests to another agency for third country resettlement. Absent the Court's intervention, Petitioner will remain in detention seemingly indefinitely. Given the Court's finding that Petitioner is likely to succeed on at least one of his claims, Plaintiffs have established an irreparable harm in the form of unlawful detention. Therefore, the second *Winter* factor favors Petitioner.

///

///

### 3. Balance of Equities and Public Interest

When the government is an involved party, the third and fourth *Winter* factors—the balance of the equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioner argues that these factors favor him because "the government 'cannot reasonably assert that it is harmed in any legally cognizable sense' by being compelled to follow the law" and that unlawful, indefinite detention and possible removal to a third country where he may suffer imprisonment or persecution are serious harms. [Doc. No. 10 at 8.] Respondents argue that there is significant public interest in the timely execution of immigration laws and removal orders. [Doc. No. 15 at 9–10.]

"[I]t would not be equitable or in the public's interest to allow . . . [violation of] the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). "On the contrary, the public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights." *Id.* (alteration in original) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Moreover, Respondents have presented no evidence to support that Petitioner has not or will not cooperate in the timely execution of his removal if he is not in Respondents' custody. The Court therefore finds that the third and fourth *Winter* factors support injunctive relief.

### C. Third Country Removal

Petitioner has been granted deferral of removal to Iran under the Convention Against Torture, meaning that as long as such deferral remains in effect, he may not be removed to Iran. But he may be eventually removed to a third country pursuant to 8 U.S.C. § 1231(b)(2). *See Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021) ("DHS retains the authority to remove the alien to any other country authorized by the statute. See §§ 208.16(f), 1208.16(f), 1240.12(d)."). Petitioner asserts that before doing so, however, the government must give him adequate notice and an opportunity to be heard regarding the potential for persecution, torture, or death in the third country. [Doc. No. 10 at 2–3, 6.]

Respondents aver that they have been working "as expeditiously as possible to locate a third country for resettlement," but no country has yet been identified. [Doc. No. 15 at 3.] Nor is there any evidence that, if a third country is identified, Respondents will contravene Ninth Circuit precedent requiring Petitioner to be notified that he may apply for withholding of removal to that third county. *See, e.g.*, *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). It is thus premature on the current record for this Court to order injunctive relief related to Petitioner's potential future removal to an unidentified third country. The Court **DENIES** Petitioner's TRO on this issue.

### D. Bond

A court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted) (emphasis in original). If there is no realistic likelihood of harm to the defendant from enjoining the disputed conduct, "the district court may dispense with the filing of a bond[.]" *Id*. Given that Respondent has not argued that complying with the TRO will be costly, [*see* Doc. No. 8 at 9–10], the Court **DECLINES** to set bond.

///
///
///
///
///
///

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** that:

1. Respondents immediately release Petitioner from ICE custody, and for the 14 days following this order that Petitioner remain under the same conditions as his last release from immigration custody

2. Respondents **SHOW CAUSE** why, after this 14-day period, Petitioner's release should not continue under the same conditions as his last release from immigration custody. Respondents shall file the response to this order to show cause on or before **November 24, 2025**, and Petitioner may file any reply on or before **December 1, 2025 at 12:00 p.m.**

The parties must appear on **December 2, 2025 at 9:30 a.m.** for a hearing on the Court's order to show cause and on the merits of the Petition. [Doc. No. 9.] Because both parties addressed the motion for TRO and Petition in their respective briefing on the TRO, [Doc. No. 15 at 2; Doc. No. 16 at 1], no additional briefing shall be submitted on the Petition.

It is **SO ORDERED.**

Dated: November 17, 2025

Hon. Cathy Ann Bencivengo
United States District Judge